# United States District Court
# District of South Carolina

| | |
|---|---|
| John Randall Futch, #08700-021; | ) C/A No.6:05-2529-HFF-WMC |
| Plaintiff; | ) |
| vs. | ) **Report and Recommendation** |
| Lt Finnerty; | ) |
| Defendant. | ) |

The Plaintiff, John Futch (hereafter, the "Plaintiff"), is a prison inmate in the custody of the Federal Bureau of Prisons (FBOP). His *pro se* Complaint appears to be a *Bivens* action.[1] Pursuant to the provisions of Title 28 United States Code §636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) D.S.C., this matter has been referred to the undersigned for screening under the Prison Litigation Reform Act (PLRA) of 1996, 28 U.S.C. § 1915A.

## BACKGROUND

Plaintiff is presently incarcerated at the Edgefield Federal Correctional Institution (FCI-Edgefield) in Edgefield, South Carolina. In two prosecutions, he entered guilty pleas before the United States District Court for the Southern District of Georgia:

---

[1] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). In *Bivens*, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-820 & n. 30 (1982). *Harlow*, which is most often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in *Harlow*, the Supreme Court stated that *Harlow* was applicable to state officials sued under 42 U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in *Bivens* actions and *vice versa*. *Farmer v. Brennan*, 511 U.S. 825 (1994). *See also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443-444 (4th Cir. 1988); *Osabutey v. Welch*, 857 F.2d 220, 221-223 & n. 5 (4th Cir. 1988); and *Tarantino v. Baker*, 825 F.2d 772, 773-775 & n. 2 (4th Cir. 1987).

1

(1) Possession With Intent to Distribute (PWID) Cocaine in a 240 month sentence, *see United States. v Futch*, 4:02-cr-00285-WTM (S.D. Ga. 2002), *aff'd* 99 Fed. Appx. 880 (11th Cir. 2004); and (2) Conspiracy to Defraud the USA and Mail Fraud, resulting in concurrent 30 month sentences (consecutive to 4:02-00285), *see United States v. Futch, et al.*, 4:02-cr-00232-WTM (S.D. Ga 2002), *aff'd* 99 Fed. Appx. 880 (11th Cir. 2004).[2] Originally, Plaintiff was one of seven defendants in *United States v. Futch, et al.*, 4:02-cr-00188-WTM (S.D. Ga. 2002) a cocaine trafficking prosecution in which the Plaintiff was alleged to have been a dealer. His case was apparently severed from the others.

> The narrative is recited below:
>
> I admitted myself to segregation on 6-28-05. Since this time, I have been harassed by Lt. Finnerty. He has attempted to put me in cells with other inmates to jump on me. He continues to harass me in other ways. All other [sic] to be proven by documents. I have requested recreation by myself but Lt. Finnerty tells his staff to put me in the pen with others. I can obtain affidavits from inmates saying he has discuss facts about them jumping on me.

[1-1, pp. 4-5.] Plaintiff asks this Court to direct that he receive recreation in isolation and direct the defendant and his staff to cease placing him in cells with fellow inmates who may do harm to him. [1-1, p. 6, and "Affidavit" 1-2.]

Under *Houston v. Lack*, 487 U.S. 266 (1988), Plaintiff commenced this action on August 25, 2005. On September 7, 2005, the undersigned filed an order directing Plaintiff to answer Special Interrogatories. The purpose of the interrogatories was to obtain information regarding Plaintiff's pursuit of administrative relief under the Federal Bureau of Prisons Program Statement (PS) 1330.13 ("Administrative Remedy Program"). Plaintiff

---

[2] – The dockets of Plaintiff's civil and criminal cases are accessible at the Public Access to Court Electronic Records (PACER) website maintained by the United States District Court for the Southern District of Georgia. *See* <https://ecf.gasd.uscourts.gov>.

filed his responses on September 21, 2005, [14], but not before filing a "Reply" with six (6) pages of attachments [6-1], a letter [7], five motions [5, 7, 8, 9 and 10], and two more letters with sixty-seven (67) pages of attachments [12 and 13].

### *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5 (1980); *Estelle v. Gamble*, 429 U.S .97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F. 2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe, supra*. Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. Liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### PRIOR CIVIL ACTIONS

The complaint form used by Plaintiff in this case asks if he had filed any actions in federal or state court concerning his imprisonment. [1-1, p. 3.] Plaintiff responded that he had not. In fact, Plaintiff has filed approximately eighteen civil actions

since 1999 in the United States District Court for the Southern District of Georgia, most of which involve his imprisonment and his belief that it has resulted from a conspiracy.[3]

Federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989). This doctrine is so well settled that only a limited citation of authorities is possible here. *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980); *St. Louis Baptist Temple v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir.1979); *Barrett v. Baylor*, 457 F.2d 119, 124 n. 2 (7th Cir.1972); *United States ex rel. Geisler v. Walters*, 510 F.2d 887 (3rd Cir. 1975); *Rhodes v. Houston*, 309 F.2d 959 (8th Cir. 1963); *St. Paul Fire & Marine Insurance Company v. Cunningham*, 257 F.2d 731 (9th Cir. 1958).

While incarcerated under Georgia state convictions (or awaiting trial in his federal criminal prosecutions) he filed the following actions complaining of prison conditions: *Futch v. (Hugh) Smith*, et al., 3:99-00048-DHB-WLB (S.D. Ga 1999); *Futch v. Lawrence, et al.*, 5:00-00349-HL-CWH (M.D. Ga 2000); and *Futch v. Dorsey*, 4:02-00229-BAE (S.D. Ga. 2002). In *Futch v. (Hugh) Smith, et al.*, *supra*, Plaintiff claimed that he was "pressured" into participating in an "undercover operation" at Dodge State Prison. The investigators then reneged on promises and allowed him to be exposed to harassment. Plaintiff was then transferred to Montgomery State Prison, where harassment continued.

---

[3] – These eighteen cases do not include actions for relief under 28 U.S.C. § 2254 or § 2255. *See Futch v. McFadden*, 2:04-00012-AAA-JEG (S.D. Ga. 2004); *Futch v. McFadden*, 4:04-00007-WTM-GRS (S.D. Ga. 2004); *Futch v. United States*, 4:04-000097-WTM-GRS (S.D. Ga. 2004); *Futch v. United States*, 4:04-00141-WTM-GRS (S.D. Ga. 2004); *Futch v. United States*, 4:05-00053-WTM-GRS (S.D. Ga. 2005).

Transferred to Rivers State Prison, he allegedly found himself being pressured into another undercover investigation. He also claimed a sexual assault at Rivers, and was then moved to Baldwin State Prison. Plaintiff voluntarily dismissed all these actions.

Once in federal custody, the Plaintiff began filing similar actions regarding federal correctional institutions. In *Futch v. McFadden, et al.*, 2:03-00199-AAA-JEG (S.D. Ga. 2003), he asked the court to enjoin FBOP from transferring him away from FCI-Jesup on the basis of "fabricated" letters written by other inmates. Plaintiff alleged that prison counselors and staff were prejudiced against him by reason of his homosexuality. He made other complaints about prison conditions. A month after filing the complaint, Plaintiff dismissed the action. Parallel complaints were filed in two other cases and also dismissed within a month. *See Futch v. Finaucci, et al.*, 2:03-00200-AAA-JEG (S.D. Ga. 2003) and *Futch v. Hearn, et al.*, 2:04-00006-AAA-JEG (S.D. Ga. 2004).

At the same time, the Plaintiff filed a series of cases alleging that he had been a victim of collusion among Drug Enforcement Administration (DEA) investigators. In *Futch v. Sisco, et al.*, 4:02-00231-BAE (S.D. Ga. 2002), Plaintiff sought Two Million Eight Hundred Thousand Dollars ($2,800,000.00), alleging that DEA agent Gerald Sisco breached promises made in return for his cooperation in a drug investigation. Plaintiff also alleged that Sisco made sexual advances upon him. An amended complaint thereafter alleged that two other DEA agents sexually harassed Plaintiff. After defense motions to dismiss, he voluntarily dismissed the action.

In *Futch v. (Russell) Smith, et al.*, 4:02-00271-BAE (S.D. Ga. 2002), a 127-page complaint was filed which attacked the DEA investigation, the undercover work, and Plaintiff's ultimate indictment in *U.S. v. Futch, et al.*, 4:02-cr-0188-WTM. Two months

5

later the Plaintiff moved for voluntary dismissal. The court dismissed the action with prejudice. *Futch v. Sisco*, 4:03-00102-BAE (S.D. Ga. 2003), a later action, was dismissed for failure to file forms required by the Prison Litigation Act (PLRA) of 1996, 28 U.S.C. § 1915(a) and (b).

*Futch v. Crum, et al.*, 4:03-00004-BAE (S.D.Ga. 2003), *Futch v. McCuthen, et al.*, 4:03-00005-WTM (S.D. Ga. 2003), and *Futch v. Kingery*, 4:03-00006-BAE (S.D. Ga. 2003) all alleged Fourth Amendment violations in searches leading to the Plaintiff's prosecution. He moved to voluntarily dismiss the cases a month after filing them. *Crum, et al.* and *Kingery* were dismissed with prejudice, while *McCuthen* was dismissed without prejudice.

In April, 2004, the Plaintiff resumed his litigation against DEA personnel. In *Futch v. (Russell) Smith, et al.*, 4:04-00068-BAE-GRS (S.D. Ga. 2004), he sought but was denied reconsideration of the earlier "with prejudice" dismissal. Barely a month later, Plaintiff voluntarily dismissed the action. In *Futch v. Hutchinson, et al.*, 4:04-00069-WTM (S.D. Ga. 2004) and *Futch v. Ashcroft, et al.*, 4:04-00130-BAE (S.D.Ga. 2004), the class of defendants was expanded to include President Bush, the DEA Administrator and head of the DEA Office of Professional Responsibility. In *Hutchinson, et al.*, the 72-page complaint included copies of UPS shipping receipts to several members of Congress. Both actions were dismissed when Plaintiff failed to bring them into "proper form" under PLRA.

## THREE RECENT ACTIONS

As mentioned above, this action commenced on August 25, 2005. On September 1, 2005, Plaintiff commenced *Futch v. Davis*, 6:05-2589-HFF-WMC (D.S.C.

2005) in which the complaint alleged that the defendant was conspiring to have fellow inmates in the FCI-Edgefield Special Housing Unit (SHU) attack him.

A week later, on September 8, 2005, *Futch v. Coursey, et al.*, 4:05-00163-WTM-GRS (S.D. Ga. 2005) was filed in the Southern District of Georgia. Plaintiff alleged that agents Sisco and Smith conspired to have the United States seek forfeiture of his money in a bank account at the time of his arrest in July, 2002. *See United States, et al., v. $18,997.89, et al*, 4:03-00010-BAE (S.D. Ga. 2003). The case ended favorably for Plaintiff and his co-defendant, Pittman: the court returned the $18,997.89 to them. *See* Document # 102 in *United States, et al., v. $18,997.89, et al*, *supra*.

James L. Coursey served as Assistant U.S. Attorney in the forfeiture case. The Plaintiff alleged that Coursey became so upset and frustrated that he joined the conspiracy to have him killed. *See* "Complaint" Document #1 in *Coursey, supra*. Plaintiff also alleged that AUSA Coursey had secured the assistance of Counselor (Willie) Davis at FCI-Edgefield as well as Inmate James H. Braddy, FBOP Register Number # 09321-007. On page four of his Complaint in *Coursey*, *supra*, Plaintiff recited almost verbatim the allegations of *Furtch v. Davis*, *supra*. He alleged that Braddy told him that Davis promised parole by September, 2006, if he would "fuck me up." On June 27, 2005, Plaintiff reported these facts to Bill Pierce and Lt. Vings. On June 28, 2005, Plaintiff was admitted to SHU for protective custody. Finally, he alleged that Lt. Finnerty continued the conspiracy by recruiting potential attackers "at the direction of Counselor Davis, through James L. Coursey, Jr., and Russell Smith, Gerald Sisco." Document 1, p. 5, *Coursey*, *supra*.

Obviously, Plaintiff's three recent actions duplicate one another. The voluminous papers filed in this case since September 12, 2005, are of little help in screening Plaintiff's claims. One attachment, however [12-11], reveals that Plaintiff has notified two additional FCI-Edgefield officials – Lt. Bryant and Lt. Hughes – that he feared for his safety. He was voluntarily placed into protective custody when they signed this document. Altogether, from Plaintiff's own pleadings and his exhibits, it appears that he has alerted at least six members of the FCI-Edgefield administration to his alleged need for protection: Warden LaManna, Ms. King, Mr. Pierce, Lt. Vings, Lt. Bryant and Lt. Hughes.

On September 21, 2005, Plaintiff wrote a letter to this Court advising that he had been assigned a new counselor, replacing the defendant in *Futch v. Davis*, *supra*. [13] Plaintiff added the following unexpected remark:

> Judge Catoe, I am still a bit skeptical of dismissing the action. I believe that Lt. Finnerty is going to continue and harass me. Certainly I would like to [sic] but something doesn't feel right. Accordingly, I have submitted a consent request for the Courts to deduct the money from my account. If I could be assured that Lt. Finnerty would withdraw I would be more eager to dismiss it. Again, I believe after this week I will be in a better position to make a decision.

[13, pp. 1-2.] Along with this letter, Plaintiff filed the necessary financial information to bring this action into "proper form" for screening under 28 U.S.C. § 1915A. [15.]

In his letter, Plaintiff referred to a meeting with S.I.A. McLafferty from the FBOP Office of Internal Affairs. The same day, Plaintiff sent a similar letter to the U.S. District Court for the Southern District of Georgia in which he moved for a voluntary dismissal of *Futch v. Coursey, et al.*, *supra*:

> On September 16, 2005, this Plaintiff met with special Investigation Agent, McLafferty at FCI Edgefield. Pursuant to this dismissal, an investigation was forwarded through Internal Affairs to the Office of

8

> the General Inspector for an investigation. Also, in our meeting, I explained that I had made contact with the Office of Professional Responsibility "John Driscoll" Deputy Chief via certified mail 7004-1160-0005-9339-5548 along with [Congresswoman] "Nancy Pelosi" United States Senate [sic]. Based on the agreement in the meeting, I am formally moving this Court for a dismissal and that it is conditioned as a part of this Court's record. I hereby dismissed [sic] the said Complaint based on the facts.

*See* Document #4 *Futch v. Coursey, et al.*, *supra*. The Honorable G. R. Smith, United States Magistrate Judge for the Southern District of Georgia, immediately recommended that the motion be granted. *See* Document #5 *Futch v. Coursey, et al.*, *supra*. Plaintiff has not advised this Court of the voluntary dismissal in Georgia.

From the foregoing it appears that the Plaintiff is pursuing administrative remedies and is sufficiently satisfied with the proceedings that he has chosen to dismiss his parallel action in Georgia. Nevertheless, on October 3, 2005, Plaintiff again wrote this Court, providing details of his meeting with SIA McLafferty. The letter concluded: "Finally, this meeting does not waive my right to further appeal for a BP-8 nor does it interfere with the pending lawsuit." [16, p. 3.]

## **FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

A *Bivens* action requires exhaustion of administrative remedies. The PLRA, 42 U.S.C. §1997e(a), provides: "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court has held this to be a mandatory provision which "applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002).

This Court may only review FBOP administrative determinations after a petitioner has exhausted the administrative remedies provided under 28 C.F.R. § 542.10 through § 542.16. The administrative process is described in Program Statement (PS) 1330.13 ("Administrative Remedy Program") implementing 28 Code of Federal Regulations (CFR) Ch. V, Subch. C, Part 542.  After informal attempts to resolve the matter with staff (BP-8 "Request to Staff") have failed, the inmate must present his claims to the Warden of the institution where he is housed (BP-9 "Request for Administrative Remedy").  28 C.F.R. § 542.13(b).  Failing to obtain redress, the inmate must appeal the Warden's determination to the Regional Director of the Federal Bureau of Prisons (BP-10 "Regional Administrative Remedy Appeal") – in the present case, the Southeast Regional Office (SERO) – and, thereafter, to the Office of General Counsel (BP-11).  28 C.F.R. § 542.15.

When an inmate "reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution," a request may be filed directly with the appropriate FBOP Regional Director. 28 C.F.R. § 542.13(d)(1).  Although Plaintiff does not so indicate, his report of an interview with an investigator from the FBOP Office of the Inspector General, strongly suggests that he has succeeded in communicating to responsible persons the sensitive issues which he has raised in his three most recent civil actions.  Plaintiff has not exhausted his administrative remedies.  Therefore, this action is premature.  This Court should dismiss this case *sua sponte*, thereby relieving Plaintiff of the need to make a decision on the matter of continuing his action

**RECOMMENDATION**

Under 28 U.S.C. § 1915 a District Court may dismiss a pleading by an indigent and/or *pro se* litigant upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious."  § 1915(e)(2)(B)(I), (ii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25 (1992).  Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).  The court may dismiss a claim as "factually frivolous" under §1915(e) if the facts alleged are clearly baseless.  *Denton v. Hernandez, supra*.   In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor.  *Id*.

The Defendant should not be required to answer this action.  It is therefore recommended that the within Complaint be dismissed without prejudice and without issuance or service of process.  In light of Plaintiff's failure to disclose the dismissal of *Futch v. Coursey, supra*, his apparent history of filing and dismissing actions in the Southern District of Georgia, and his lack of candor concerning this parallel and prior litigation, it is further recommended that this dismissal be deemed a "strike" under 28 U.S.C. § 1915(e)(2) and (g).  Plaintiff's attention is directed to the Notice on the following page.

s/William M. Catoe  
United States Magistrate Judge

October 14, 2005  
Greenville, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**

The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See Mathews v. Weber*, 423 U.S. 261, 270-271 (1976).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See Keeler v. Pea*, 782 F. Supp. 42, 43-44 (D.S.C. 1992). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n. 4 (4th Cir.); and *Wright v. Collins*, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also Praylow v. Martin*, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court). In *Howard*, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord Lockert v. Faulkner*, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and *Goney v. Clark*, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice apprises the petitioner of the consequences of a failure to file specific, written objections.** *See Wright v. Collins*, *supra*; and *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk
United States District Court
Post Office Box 10768
Greenville, South Carolina 29603**